IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION and U.S. PHILIPS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 02-123-KAJ |
| CONTEC CORPORATION, COMPO MICRO TECH, INC., SEOBY ELECTRONICS CO., LTD., REMOTE SOLUTION CO., LTD., F/K/A HANGO ELECTRONICS CO., LTD., HANGO REMOTE SOLUTION, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Richard L. Horwitz, Esq. and David E. Moore, Esq., Potter Anderson & Corroon LLP, Hercules Plaza, 6th Floor, 1313 N. Market Street, Wilmington, Delaware 19801, counsel for plaintiffs.
    Of counsel: Garrard R. Beeney, Esq., Marc De Leeuw, Esq., Maureen P. Sheehan, Esq., Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004.

Jack B. Blumenfeld, Esq. and Julia Heaney, Esq., Morris, Nichols, Arsht & Tunnell, 1201 N. Market Street, Wilmington, Delaware 19801, counsel for defendant Compo Micro Tech, Inc.
    Of counsel: Alfred R. Fabricant, Esq., Martin Pfeffer, Esq. and Lawrence C. Drucker, Esq., Ostrolenk, Faber, Gerb & Soffen, LLP, 1180 Avenue of the Americas, New York, New York 10036.

David L. Finger, Esq., One Commerce Center, 1201 Orange Street, Suite 725, Wilmington, Delaware 19801, counsel for defendants Remote Solution Co., Ltd. f/k/a Hango Electronics Co., Ltd. and Hango Remote Solution, Inc.

Wilmington, Delaware
January 9, 2006



JORDAN, District Judge

## I.    INTRODUCTION

Before me is a motion filed by plaintiffs Philips Electronics North America Corp.

and U.S. Philips Corp. (collectively, "Philips"), seeking summary judgment on liability for

contributory infringement and inducing infringement. (Docket Item ["D.I."] 524.)  Also

before me is a motion filed by defendants Remote Solution Co., Ltd., F/K/A Hango

Electronics Co., Ltd. ("Remote Solution"), and Hango Remote Solution, Inc. ("Hango";

collectively, "Defendants"), seeking summary judgment of non-infringement and

summary judgment for failure to prove damages.  (D.I. 527.)  Philips has also filed a

Motion for Costs, Attorneys' Fees and Other Expenses incurred in addressing new

defenses raised by Hango and Remote Solution.  (D.I. 523.)

Jurisdiction is appropriate under 28 U.S.C. §§ 1331 and 1338.  For the reasons

that follow, Philips' motion for summary judgment will be granted-in-part and denied-in-

part, and Defendants' motion for summary judgment will be denied.  Philips' motion for

attorney's fees will also be denied.

## II.    BACKGROUND

The factual and procedural background of this case, as well as a discussion of

the relevant technology, can be found in several prior opinions and orders of this court.[1]

_____

[1] *See* D.I. 351 (denying Remote Solution's motion to dismiss for lack of personal
jurisdiction); D.I. 352, 353 (granting Compo Micro Tech's ("CMT") motion to sever and
for separate trials); D.I. 376, 377 (claim construction); D.I. 388, 389 (granting in part
Philips' motion for summary judgment on infringement, and denying in part Defendants'
motion for summary judgment of non-infringement); D.I. 390 (denying motion for
summary judgment of invalidity); D.I. 394, 395 (granting motion for summary judgment
on Defendants' affirmative defense of equitable estoppel); D.I. 400, 401 (granting in
part and denying in part motion for partial summary judgment limiting Philips' damages);
D.I. 446 (issuing judgment and permanent injunction against CMT); D.I. 465 denying
motion to stay injunction); D.I. 484 (denying various motions made by Hango); D.I. 486

For the purposes of these motions, the relevant factual and procedural background is as follows.

Philips is the assignee of U.S. Patent Number 4,703,359 (the "'359 patent"), which issued on October 27, 1987. (D.I. 41, Tab B at ¶¶ 15-16.) The '359 patent discloses a method for programming universal remote control units ("URCs") for controlling various appliances from different manufacturers. *See* '359 patent, col. 1, lns. 15-17. This method of programming a URC, the "autoscan" method, involves the user activating the URC, and the URC sending a command in different signal structures until the appliance responds. (Claim Construction Opinion, D.I. 377 at 3.)

Philips filed an amended complaint on September 17, 2002 joining Compo Micro Tech, Inc. ("CMT"), Seoby Electronics, Remote Solution, and Hango as defendants in its patent infringement action against Contec.[2]  (D.I. 41, Tab B at ¶¶ 10-13.) Remote Solution is a manufacturer of remote controls based in Korea. (D.I. 528, Ex. A at ¶ 2.) Hango, which is now defunct, was owned in part by Remote Solution and was a California corporation. (*Id*. at ¶ 11.) Hango did the billing and collection for Remote Solution's U.S. customers. (*Id*.) The accused URCs manufactured by Remote Solution incorporate both the patented "autoscan" method of programming, as well as a "direct

---

(denying without prejudice motion for judgment as a matter of law on damages); D.I. 491, 492 (granting Defendants' motion for reargument); D.I. 493, 494 (denying CMT's motion for judgment as a matter of law, and granting Philips' motion for attorneys' fees and expenses).

[2] Philips later settled its case against Contec and Seoby. (*See* Consent Judgement and Order, D.I. 258.)

2

entry" method of programming, wherein a user enters a particular code that allows the appliance to respond to the URC signal. (D.I. 532 6-7.)

On October 21, 2003, Philips moved for summary judgment against CMT, Remote Solution, and Hango. (D.I. 292.) Neither Remote Solution nor Hango took the trouble to advance any arguments in opposition to that motion, except to assert that they joined "in the arguments set forth by [CMT] ... submitted in opposition to plaintiffs' motion for summary judgment on the issue of infringement." (D.I. 326 at 4; D.I. 327 at 15.) At oral argument on the summary judgment motions, counsel for CMT conceded that if Philips' proposed claim construction were adopted for a particular term in the '359 patent, that CMT "would fall within and must fall within the construction and we would be liable for infringement." (Transcript of Markman Hearing, D.I. 338 at 50:22-24.) At that same argument, counsel for Hango and Remote Solution stated that those Defendants joined CMT, and that "the papers of the Philips experts do not distinguish the methodology, the workings of the Remote Solution universal remotes from those of Compo Micro Tech and there are no distinctions." (Id. at 19:14-20.)

On February 6, 2004, CMT filed a motion to sever its trial from that against Hango and Remote Solution. (D.I. 343.) On March 12, 2004, I granted that motion (D.I. 352, 353), noting that Defendants admitted that their "defenses will be parallel with CMT, and [their] fortunes will rise and fall with those of CMT." After claim construction, I granted summary judgment of literal infringement of the '359 patent to Philips against CMT. Philips Electronics North America Corp. v. Contec Corp., 312 F. Supp. 2d 642, 645 (D. Del. 2004). However, I did not decide the issue of whether infringement was direct or indirect, because those arguments were not raised by CMT, Remote Solution,

3

or Hango. Therefore, following a motion for reargument, I allowed Defendants to raise
the present arguments on liability for infringement. (D.I. 491.)

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that summary judgment should be
granted when "the pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  The party moving for summary judgment has the burden of showing
that there are no genuine issues of fact and that the movant is entitled to judgment as a
matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60 (1970).  The moving
party also bears the responsibility of informing the court of the basis for the motion, and
identifying those portions of the record which demonstrate the absence of a genuine
issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The burden
then shifts to the nonmoving party to "set forth specific facts showing that there is a
genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 250 (1986).

A patent infringement analysis involves two steps: claim construction and
application of the construed claim to the accused process or product.  *Markman v.
Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S.
370 (1996).  The first step, claim construction, has been held to be a matter of law.
*See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en
banc).  The second step, application of the claim to the accused product, is a question

4

of fact. *See Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) ("Patent infringement, whether literal or under the doctrine of equivalents, is a question of fact."). Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecon, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001).

## IV.   DISCUSSION

### A.   Philips' Motion for Summary Judgment of Contributory and Inducing Infringement

Philips has moved for summary judgment that Defendants contribute to and actively induce infringement of the '359 patent. (D.I. 524.)  Because Defendants conceded that the workings of their URC were the same as the workings of CMT's URC (Transcript of Markman Hearing, D.I. 338 at 19:14-20), they cannot now contend that it does not embody the method claimed in the '359 patent, and they do not appear to make such an argument in their briefing.  Instead, Defendants argue that Philips is not entitled to summary judgment of infringement because (1) there is no specific evidence of direct infringement by anyone using Defendants' URCs; (2) there is no contributory infringement because Defendants' URCs have a substantial non-infringing use; and (3) Philips cannot prove inducement to infringe.  (D.I. 532 at 3.)

#### 1.   Specific Evidence of Direct Infringement

Defendants contend that Philips' claims of contributory infringement and inducement to infringe must fail because Philips cannot provide clear evidence of direct infringement of the '359 patent.  Both claims of active inducement of infringement and

5

contributory infringement claims require a patentee to show, as a predicate, that there has in fact been direct infringement of the patent in suit. See *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed.Cir.2005) (noting that to succeed on a claim of inducement to infringe, "the patentee must show, first that there has been direct infringement").

Defendants contend that, because their URCs embody both the patented "autoscan" method, as well as a non-infringing method of programming, Philips cannot show that any customer actually used the patented method. (D.I. 532 at 16.) However, it is a well-settled principle that "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 623 (Fed. Cir. 1995). Here, there is no dispute that Defendants' URCs contain the patented method for programming the URC, as well as a non-infringing method. Thus, Remote Solutions' URCs infringe the patent, and more specific evidence of direct infringement is not necessary.

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (2004), cited by Remote Solutions in support of its position, is inapposite. In *Dynacore*, the patent-in-suit had claims directed to a local area network ("LAN"). *Dynacore*, 363 F.3d at 1266. The plaintiff alleged that a product infringed its patent if that product incorporated technology that allowed a user to set up a LAN compliant with a particular technical standard. *Id.* at 1266-67. However, while the patent taught "the design of a specific type of LAN requiring at least three connected devices ... the defendants' products [were] not LANs but rather individual devices containing technology conforming" to the

particular technical standard. *Id.* The plaintiff sought to establish direct infringement based solely on the hypothetical situation where a user of one of defendants' products set up a LAN that conformed to the standard. *Id.* at 1274. This situation is distinguishable from the instant case. In *Dynacore,* direct infringement required the customer to modify the defendants' products in a particular way, and the plaintiff could not prove that such a situation had ever occurred. *Id.* at 1266-67. Here, in contrast, the device sold by Defendants already embodies the patented method when it reaches the customer, and requires nothing more from the end user than to use the URC without any modification. Furthermore, at least with respect to the URCs sold to Contec, Defendants provided instructions on how to use the patented method. Therefore, even though Defendants' URCs "sometimes, but not always" embody the claimed method, they infringe the '359 patent. *Bell Communications Research, Inc.*, 55 F.3d at 623.

Thus, there are no disputes of material fact, and there is sufficient proof of direct infringement of the '359 patent, based on the fact that the URCs manufactured by Defendants embody the patented method.

### 2.   Contributory Infringement

Defendants also contend that they cannot be held liable for contributory infringement because their URC has a substantial non-infringing use, as it incorporates a non-infringing method of programming.[3] "In order to succeed on a claim of

_____

[3] Defendants also argue that, because their URCs have a substantial noninfringing use, Philips is required to come forward with specific instances of direct infringement. However, because, as is described more fully in the accompanying text, simply adding a non-patented method to a device that practices a patented method does not give that device a substantial non-infringing use, this argument is without merit.

7

contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (*quoting Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

Defendants argue, in both their response to Philips' summary judgment motion, and in their brief supporting their own summary judgment motion, that Defendants' URC has substantial non-infringing uses, and thus that Defendants do not contribute to infringement of the '359 patent. (See D.I. 528 at 15-17; D.I. 532 at 11-16.) There is no genuine issue of material fact with respect to this dispute,[4] since both parties agree that Defendants' URC embodies both the patented "autoscan" method of programming, as well as the unpatented "direct entry" method of programming. (D.I. 528, Ex. A at ¶¶ 7-8; *see also* D.I. 528 at 6-7; D.I. 532 at 6-7.) The dispute here is one of law.

Philips relies on *Oak Industries v. Zenith Electronics Corp.*, 697 F. Supp. 988 (N.D. Ill. 1988), in arguing that Defendants' addition of the "direct entry" method of programming to a URC that practices the "autoscan" method does not give that URC a substantial non-infringing use. (D.I. 525 at 15-19; D.I. 533 at 4-9.) In the *Oak*

---

[4] In a footnote, Defendants contend that, in addition to the fact that their URC has substantial non-infringing uses, Philips is not entitled to summary judgment of infringement because there are issues of material fact as to the other elements of contributory infringement. (D.I. 528 at 16 n.7.) However, there is proof of direct infringement of the '359 patent by Defendants' URCs (*see supra* 5-7). Defendants knew of the '359 patent, and knew that their URCs were infringing, at least as of September 17, 2002, the date that this lawsuit was filed. Thus, there is no genuine issue of material fact as to any of those elements of contributory infringement.

8

*Industries* case, the plaintiff, which owned a patent that taught a method for eliminating

a particular type of interference in cable television, sued the defendant, which sold

cable television converters that allegedly practiced that method.  *Oak*, 697 F. Supp. at

989.  However, in addition to practicing the patented method, the defendant's cable

television converters also performed additional functions, such as expanding the

number of channels received and unscrambling protected signals.  *Id.* at 991.  The

court denied summary judgment of non-infringement, stating:

> Additional functions in a device that practices a patented method does
> [sic] not diminish direct infringement and, therefore, the fact that the
> device sold has other functions which are performed simultaneously with
> the patented method does not otherwise substantiate a noninfringing use
> for the purposes of § 271(c). This rule flows directly from the logic of the
> patent laws. To hold to the contrary would allow sellers of products that
> are clearly intended to infringe a patented method to avert liability simply
> by adding functions to that device. Therefore, we do not think it enough
> that Zenith may have combined in the same package several devices: one
> to suppress VHF interference, one to unscramble signals, and one to
> expand channels.

*Id.* at 995.

The facts in *Oak Industries* have important similarities to the facts in the instant

case.  Here, Defendants argue that the addition of a noninfringing method to their URC

is enough to give their device a substantial noninfringing use, even though it includes

the patented method.  The argument is legally flawed, for it would indeed violate the

"logic of the patent laws" to allow a potential infringer to avoid liability for contributory

infringement by simply adding a noninfringing function to a device that practices a

patented method.

9

Defendants attempt both to distinguish *Oak Industries* on its facts and also to

argue that it is not applicable to this case. However, in their attempt to distinguish the

case, Defendants actually strengthen Philips' argument. Defendants quote language

from a later decision in *Oak Industries*, wherein the court stated:

> If the practice of the patented method is incidental and necessary to the
> practice of the unpatented methods, the device is a staple and there can
> be no contributory infringement. If, on the other hand, the practice of the
> patented method is not necessary or incidental to the practice of the
> unpatented methods, a jury could find that the device as a whole is not [a]
> staple and the seller could be liable for contributory infringement.

*Oak Industries, Inc.*, 726 F.Supp. 1525, 1538-39 (N.D.Ill. 1989). Here, the practice of

the "autoscan" method of programming is not necessary or incidental to the practice of

the "direct entry" method. Instead, those are two separate methods for programming

Defendants' URC to communicate with a particular appliance.[5] Thus, under the

standard set out in *Oak Industries*, Defendants' URC is not capable of a substantial

---

[5] Defendants also make much of the fact that in *Oak Industries*, the patented and
unpatented methods were practiced simultaneously and automatically in the accused
device, which is unlike the case here, since the autoscan and direct entry methods of
programming are not used simultaneously. (D.I. 532 at 11-12.) However, the fact that
the methods were practiced simultaneously and automatically actually weighed in favor
of the defendant in *Oak Industries*, as the court noted that if the "practice of the
patented method is incidental and necessary to the practice of the unpatented
methods, the device is a staple and there can be no contributory infringement." *Oak*,
726 F.Supp. at 1538-39. Thus the simultaneous and automatic practice of the patented
and unpatented methods made it more likely that the practice of the patented method
was incidental and necessary to the practice of the unpatented method and therefore
not a basis for finding contributory infringement. *Id.* at 1539-40. Here, the fact that the
patented "autoscan" method is practiced separately from the unpatented "direct entry"
method shows that the two are not "incidental and necessary" to each other, and
militates in favor of a finding that the Defendants' URC does not have a substantial non-
infringing use.

non-infringing use.[6]  Defendants are therefore liable for contributory infringement of the

'359 patent, because all elements of contributory infringement are met. As a result,

summary judgment of indirect infringement will be granted to Philips.[7]

---

[6] Defendants also cite several cases that distinguish *Oak Industries* on its facts, and they attempt to analogize the present situation to those cases. (D.I. 532 at 13-15.) However, the cases cited by Defendants are inapposite. In another case involving URCs, *Universal Electronics, Inc. v. Zenith Electronics Corp.*, 846 F. Supp. 641 (1994), the defendant's URC was capable of controlling the electronic devices of many different manufacturers, including the plaintiff's. *Id.* at 651. The plaintiff had a patent on the method of controlling its appliances, and alleged that defendant's device infringed that patent when it was used to control plaintiff's appliances. *Id.* The court in *Zenith* distinguished *Oak Industries*, saying that, while in *Oak Industries* the portion of the device that practiced the infringing function "may not have been necessary for the converters to practice the non-infringing functions," the defendant's URCs were capable of controlling many devices using the same technology as used to control the plaintiff's devices. The court found that the URCs had substantial non-infringing uses "in that those remotes can operate many electronic devices not manufactured by Zenith." *Id.* at 652. This is different from the URC at issue here. While the URC in *Zenith* used the same technology to control plaintiff's devices, an infringing use, and other manufacturer's devices, a non-infringing use, the Defendants' URC here contains separate and separable methods of programming a URC, only one of which infringes. Thus, Defendants cannot argue that their URC has a substantial non-infringing use based on *Zenith*.

Defendants further attempt to rely on *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670 (Fed. Cir. 1990), for the proposition that "the relevant inquiry is whether there are substantial non-infringing uses for a device, not whether a device is designed so as to allow infringement of a patented process." *Universal Electronics, Inc.*, 846 F. Supp. at 651. However, *C.R. Bard* is also distinguishable on its facts, as the device in *C.R. Bard* could be positioned for use in three ways, only two of which potentially infringed the patent. *C.R. Bard*, 911 F.2d at 674. The three possible ways of positioning were inherent to the design of the device. *Id.* at 674-75. Again, this is different from the URC at issue here, which contains two separate methods of programming, one of which infringes. Defendants could sell a device which contained only the "direct entry" method of programming, but they chose not to. Therefore the Defendants cannot take shelter in arguing that their URCs are capable of a substantial non-infringing use.

[7] While Philips has made a credible argument that Defendants are liable for inducing infringement of the '359 patent, I decline to reach that argument, as I am granting summary judgment of indirect infringement based on Defendants' contributory infringement of that patent.

11

B.    Defendants' Motion for Summary Judgment of Non-Infringement

Defendants have moved for summary judgment that (1) they do not directly

infringe the '359 patent; (2) there is no contributory infringement; and (3) they are not

inducing infringement.  Additionally, Defendants argue that they are entitled to summary

judgment because, even if plaintiffs can establish liability, they have failed to prove that

they are entitled to any damages.

1.    Direct Infringement

Defendants have moved for summary judgment that they do not directly infringe

the '359 patent.  (D.I. 527; D.I. 528 at 10-15.)  Philips has responded by consenting to

its claim of direct infringement being dismissed.  (D.I. 525 at 1 n.1; D.I. 533 at 32.)

Therefore, this claim will be dismissed, and Defendants' motion for summary judgment

on this issue is denied as moot.

2.    Contributory and Inducing Infringement

For the same reasons that I set forth above for granting Philips' Motion for

summary judgment of indirect infringement, Defendants' Motion for summary judgment

on these grounds is denied.

3.    Damages

"Upon finding for the claimant the court shall award the claimant damages

adequate to compensate for the infringement, but in no event less than a reasonable

royalty for the use made of the invention by the infringer".  35 U.S.C.A. § 284.  "A

reasonable royalty 'may be based upon an established royalty, if there is one, or if not

upon a hypothetical royalty resulting from arm's length negotiations between a willing

licensor and a willing licensee.'"  *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445

12

(Fed. Cir. 1990) (*quoting Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983).

In their brief, Defendants essentially challenge the sufficiency of the evidence presented by Philips through their expert, Kerry Ruoff, as to the amount of damages and the start date of the damages analysis. (D.I. 528 at 24-28.) Thus, Defendants have, at most, raised issues of fact regarding what damages Philips is entitled to receive. Simply calling an expert's report into question is not enough for a grant of summary judgment in this case. There are genuine issues of material fact with respect to the amount of damages Philips' is entitled to receive, and summary judgment must be denied.

### C.   Philips' Motion for Costs, Attorneys' Fees and Other Expenses

Philips has also moved for costs, attorneys' fees and other expenses in connection with reopening this case and preparing summary judgment motions. (D.I. 531.) "[A]n assessment of attorney's fees is undoubtedly within a court's inherent power". *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) ("a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'"). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

Here, Philips has presented no evidence that Defendants have acted in bad faith. Philips predicates its request for fees on this court's ruling that Defendants' new defenses were presented in an untimely manner. D.I. 523 at 2. However, Philips neglects to mention that although I found that the presentation of the defenses to be untimely, I also found that "there [was] sufficient support for Defendants' arguments in

13

the relevant case law to warrant permitting those non-infringement arguments to be raised." (D.I. 491 at 4.) As the analysis here indicates, those defenses, while ultimately unsuccessful, are not without a degree of weight. Moreover, because the trial against these Defendants had already been delayed for other reasons (*see* D.I. 342), allowing the defenses to be raised and considered on their merits has not unduly prejudiced the plaintiffs. Defendants will therefore not be held responsible for the costs and fees associated with this motion, and Philips' motion for costs, attorneys' fees, and other expenses will be denied.

## V.   CONCLUSION

Accordingly, Philips' Motion for Summary Judgment (D.I. 524) will be granted as to contributory infringement, and denied as moot as to inducement of infringement. Philips' claim of direct infringement will be dismissed, and Defendants' Motion for Summary Judgment (D.I. 527) will be denied. Philips' Motion for Costs, Attorneys' Fees and Other Expenses (D.I. 523) will be denied. An appropriate order will follow.

14