IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHILIPS ELECTRONICS NORTH          )
AMERICA CORPORATION and            )
U.S. PHILIPS CORPORATION,          )
                                   )
              Plaintiffs,          )
                                   )
      v.                           )      Civil Action No. 02-123-KAJ
                                   )
COMPO MICRO TECH, INC., REMOTE     )
SOLUTION CO., LTD., F/K/A HANGO     )
ELECTRONICS CO., LTD., HANGO       )
REMOTE SOLUTION, INC.,             )
                                   )
              Defendants.          )

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

On March 8, 2005, I granted the motion for attorneys' fees and expenses

(Docket Item ['D.I."] 458) submitted by plaintiffs Philips Electronics North American

Corp., and U.S. Philips Corp. (collectively, "Philips").  (D.I. 493, 494.)  In that

Memorandum Opinion, I required Philips to submit documentation in support of its

request for fees.  (D.I. 493 at 14.)  Thereafter, Philips submitted documentation in

support of a request for attorneys' fees of $2,515,514.90, and expenses in the amount

of $747,141.93.  (D.I. 496, 497.)  On December 29, 2005, after Philips had submitted

that documentation, I issued a second order stating that Philips had failed to submit

adequate documentation of either the hours expended or a reasonable rate.  (D.I. 551

at 2.)  I required Philips to submit further documentation to support the total number of

hours worked, when the hours were worked, and what was done by whom during those

hours.  (*Id.* at 3).  I also required Philips to provide support for reasonable hourly rates,

including a statement of the manner in which its counsel, Sullivan & Cromwell LLP ("S&C") and Potter Anderson & Corroon LLP ("PA&C"), calculate the value of their attorneys' time. (*Id.*)

Presently before me is the further documentation that Philips has submitted for S&C. (D.I. 565). Also before me are the comments of defendant Compo Micro Tech ("CMT") on that documentation. (D.I. 573.) CMT argues that the documentation submitted by Philips does not support the fee it seeks and that, consequently, Philips should be granted an award of fees based on the lodestar calculation performed by CMT. (*Id.* at 8-9.) For the following reasons, I conclude that Philips has submitted documentation that supports the attorneys' fees they seek with respect to S&C, but not with respect to PA&C. I also grant Philips' request for reimbursement of expenses, except those relating to expert witnesses fees and those deemed as "miscellaneous." In addition, I will reduce Philips' request for reimbursement of expenses related to photocopying and scanning by 50%.

## II.   BACKGROUND

The factual and procedural background of this case, as well as a discussion of the relevant technology, can be found in several prior opinions and orders.[1] For

_____

[1] *See* D.I. 351 (denying the defendant's motion to dismiss for lack of personal jurisdiction); D.I. 352, 353 (granting the defendant's motion to sever and for separate trials); D.I. 376, 377 (claim construction); D.I. 388, 389 (granting in part the plaintiffs' motion for summary judgment on infringement, and denying in part the defendants' motion for summary judgment of non-infringement); D.I. 390 (denying motion for summary judgment of invalidity); D.I. 394, 395 (granting motion for summary judgment on the defendants' affirmative defense of equitable estoppel); D.I. 400, 401 (granting in part and denying in part a motion for partial summary judgment limiting plaintiffs' damages); D.I. 446 (issuing judgment and a permanent injunction against the defendant); D.I. 465 (denying motion to stay injunction); D.I. 484 (denying various

purposes of this opinion, the relevant background information is as follows.  On April 5, 2004, I issued a Memorandum Opinion and Order granting Philips' Motion for Summary Judgment that CMT's accused devices literally infringed claims 1,3, and 4 of U.S. Patent No. 4,703,359, entitled "Universal remote control unit with model identification capability" (issued October 27, 1987) ("the '359 patent").  (D.I. 388, 389.)  At the same time, I granted CMT's Motion for Summary Judgment of Noninfringement of the asserted claims of U.S. Patent No. 5,872,562, entitled "Universal remote control transmitter with simplified device identification" (issued February 16, 1999) ("the '562 patent").  (*Id.*)  On April 12, 2004, Philips and CMT conducted a trial that was limited to Philips' claims for willful infringement and damages in the form of a reasonable royalty and CMT's counterclaim of invalidity of the '359 patent.  On April 19, 2004, the jury upheld the validity of the '359 patent, awarded Philips $1 in damages for each infringing universal remote control device sold by CMT, and found that CMT's infringement was not willful.  On March 8, 2005, I granted Philips' motion for attorney fees and expenses pursuant to 35 U.S.C. § 285.  (D.I. 493, 494.)  That decision was based on findings that CMT's representations regarding its financial records were incredible, that CMT engaged in delay tactics during discovery, and that CMT engaged in trial misconduct. (D.I. 493 at 13-14.)

---

motions made by the defendant); D.I. 486 (denying without prejudice a motion for judgment as a matter of law on damages); D.I. 491, 492 (granting the defendants' motion for reargument); D.I. 493, 494 (denying the defendant's motion for judgment as a matter of law, and granting the plaintiffs' motion for attorneys' fees and expenses).

III.   **DISCUSSION**

A.   *Attorneys' Fees*

A reasonable attorneys' fee is one that is adequate to attract competent counsel, but does not produce a windfall to that attorney.  *See Blum v. Stenson*, 465 U.S. 886, 897 (1984).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. . . . The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This calculation results in what is often called the "lodestar."  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

In *Bates v. Board of Education of the Capital School District*, No. 97-394-SLR, 2000 WL 1292677, at *2 (D. Del. Aug. 29, 2000), the court provided an analysis to evaluate the reasonableness of attorneys' fees.  First, the court determines whether the documentation submitted adequately supports the hours claimed by the attorneys.  Second, the court evaluates whether the hours claimed were reasonably expended.  Third, the court considers whether the attorneys' hourly rates are reasonable.  Fourth, the court evaluates suggested reductions to the fee.  Finally, the court determines if the applicant's request for other costs is reasonable.  *Id.*

1.   *Adequate Documentation*

On December 29, 2005, I issued an order stating that Philips had failed to submit adequate documentation of either the hours expended or a reasonable rate.  (D.I. 551 at 2.)  I required Philips to submit documentation to support the total numbers of hours

4

worked, when the hours were worked, and what was done by whom during those hours.
(*Id.* at 3).  I also required Philips to provide support for reasonable hourly rates, and I
ordered that "Philips must submit not only the total hours worked, but detail supporting
when the hours were worked, and what was done by whom during those hours."  (*Id.*)
Philips submitted the additional documentation required with respect to S&C (D.I. 565),
but not with respect to PA&C.  Consequently, I deny at this time Philips' request for
attorneys' fees for work performed by PA&C in the amount of $66,764.90 because of
inadequate documentation, but, for reasons I will explain, I will give Philips ten days to
supplement the record in this regard.  I will now evaluate whether the documentation
submitted for work performed by S&C is adequate.

S&C has represented Philips in its infringement claims related to patents '359
and '562 against multiple defendants.  The documentation S&C has submitted to
support the work performed on behalf of Philips is a compilation of hours worked on
matters relating to both patents against several defendants.  (*Id.*, Ex. A.)  Because
Philips was successful only in its claim of infringement for patent '359, it devised a
method to reduce its total fees by percentages to account for work related to issues
unrelated to the '359 patent and to other defendants.[2]

---

[2] Philips argues that it could have sought an award that included work related to
the '562 patent and other defendants because the work was interrelated and brought in
pursuit of the same goal of enjoining CMT's sales and obtaining damages.  (D.I. 574 at
2; D.I. 510 at 5-6.)

S&C submitted its bills to Philips from April 1, 2003 to August 31, 2004, and

documentation in support of those bills.[3]  (*Id.*; D.I. 496 at 3-7; D.I. 565, Ex. A.)  Philips

attributes one half (50%) of the bills rendered by S&C during the period from April 2003

through March 2004 to litigation of Philips' claim on the '359 patent against CMT.

Philips argues that a 50% reduction is conservative and appropriate.  (D.I. 496 at 5.)

Although S&C represented Philips against three defendants, CMT, Remote Solution

Co., Ltd. ("Remote Solution"), and Hango Remote Solution, Inc. ("Hango"),[4] on both

patents, Philips spent a large part of its time on its claim of infringement of the '359

patent against CMT.  (*Id.* at 3.)  This is because CMT devoted many more resources to

litigating this action than Remote Solutions or Hango.[5]  In addition, Philips contends that

much of the work by S&C during this time period would have been necessary whether

---

[3] Philips states that, to be conservative, it decided to include bills commencing
as of April 1, 2003, although S&C first billed Philips in connection for work done against
CMT on August 6, 2001, and filed an amended complaint against CMT on September
16, 2002.  (D.I. 41; D.I. 496 at 3.)  Philips says that it made this decision despite the
"substantial amount" of work conducted relating to the '359 patent "that was necessary
whether there was one defendant or five defendants, and with issues directly relating to
Philips' claims against CMT."  (D.I. 496 at 3.)

[4] Philips argues that it essentially litigated against only two defendants because
Remote Solution and Hango have always been represented by the same counsel and
do not separately litigate most matters.  (*Id.*)

[5] For example, Philips contends that neither Hango nor Remote Solution noticed
a single deposition of a Philips witness or expert or sought to introduce a single expert
or witness, while CMT took ten depositions of Philips' witnesses or experts, and
proffered two experts.  (*Id.* at 4.)  CMT claims, however, that two S&C associates billed
over 70 hours to take a deposition of a Remote Solution witness during this time period.
(D.I. 573 at 3.)  Philips also argues that almost all of the briefing in the *Markman* and
summary judgment stage involved CMT, with Hango and Remote Solution simply
joining in CMT's arguments.  (D.I. 496 at 4.)

6

Philips was litigating a one patent or two patent case.[6]  (*Id.* at 4.)  Philips attributes

100% of the bills rendered by S&C during the period from April 2004 through May 2004

to litigation of Philips' claim on the '359 patent against CMT.  (*Id.* at 6.)  On March 12,

2004, the court severed the Hango/Remote Solution trial from the CMT trial.  (D.I. 352,

353.)  Then, on March 29, 2004, the court rejected Philips' proposed construction of the

claims on the '562 patent.  (D.I. 376, 377.)  Accordingly, in April 2004, Philips alleges

that it devoted its work to the trial of its claim for infringement of the '359 patent.  (D.I.

496 at 6, Ex. H.)  In May 2004, it devoted its work to post-trial motions on that same

claim.  (*Id.* at 6, Ex. I.)

Philips attributes 50% of the bills rendered by S&C in June 2006 to litigation

relating to the '359 patent against CMT.  (*Id.* at 6-7.)  It contends that it worked primarily

on post-trial matters on the '359 patent against CMT, but also performed a relatively

small amount of work in connection with Hango and Remote Solution and in

considering infringement by another party.  (*Id.* at 6, Ex. I.)  It believes that 50% is a

conservative estimate of the actual time spent on matters relating to the '359 patent

against CMT.  (*Id.* at 7.)

Finally, Philips attributes 100% of S&C's bills from July 2004 to August 2004 to

matters relating to the claim on the '359 patent against CMT.  (*Id.*)  It claims it devoted

---

[6] For instance, Philips claims that all of the individual deponents noticed by CMT in connection with matters related to both patents were either inventors listed on the '359 patent or supervised production of the first commercial universal remotes utilizing that invention.  (*Id.*)  Thus, Philips argues, it was very likely that CMT would have deposed each of these individuals had this been a case involving only the '359 patent. Similarly, Philips argues that all of its depositions of CMT employees would have been necessary if this case were limited to the '359 patent.  (*Id.*)

7

all of its work to post-trial motions regarding CMT. (*Id.* at 7, Ex. J.) To the extent that there may have been very limited instances of work performed during this period, or from April to May 2004, on matters not attributable to the claim on the '359 patent against CMT, Philips argues that these instances are more than compensated by the fact that Philips is not requesting any fees for work performed relating to the matter prior to April of 2003, or after August of 2004. (*Id.* at 8.)

CMT contends that because the descriptions in the S&C billing entries are not segregated either by patent or by the defendant, that Philips should bear the cost of uncertainty, not CMT. (D.I. 573 at 3.) Courts have concluded that when a party achieves partial or limited success on claims involving a common core of facts and shared related legal theories, the court has discretion in either identifying specific hours that should be eliminated or simply reducing the award to account for the limited success. (*See, e.g., Hensley*, 461 U.S. at 436; *Bates*, 2000 WL 1292677, at *5.) Thus, a court need not "attempt to identify specific hours spent on unsuccessful claims in an effort to exclude them for the lodestar calculation." *Bates*, 2000 WL 1292677, at *5.

Here, I conclude that the documentation S&C has submitted to support the total number of hours worked, when the hours were worked, and what was done by whom during those hours is adequate. S&C has submitted 215 pages of records indicating the date the legal work was performed, the attorney performing it, the nature of the work, and the number of hours spent performing the work. (D.I. 565, Ex. A.) Although the records do not distinguish among work relating to specific defendants or patents, I conclude that, given the interrelationships of the technology in the two patents, and the

degree to which the defendants were engaged in the litigation, Philips' reductions to account for this are reasonable, and the documentation is adequate.

### 2.    Hours Reasonably Expended

The burden to establish the reasonable necessity of the hours charged lies with the party seeking fees. *Daggett v. Kimmelman*, 811 F.2d 793, 801 (3d Cir. 1987). The district court should exclude hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 433. S&C claims that among partners, special counsel, associates, summer associates, paralegals, litigation support personnel, and clerks, it expended 10,979 hours between April 2003 to August 2004 without its proposed adjustment. (D.I. 511 at 5.) Applying the adjustment which I concluded was reasonable, it expended 7,195.80 hours. (*Id.* at 7.) S&C has submitted 215 pages of records to support these claims. (D.I. 565, Ex. A.)

CMT alleges that the number of hours Philips' expended during this time period is excessive. (D.I. 573 at 4-5.) However, CMT's arguments in support of this allegation do not merit a reduction in the number of hours claimed. CMT contends that because over 290 time entries indicate that the timekeeper billed at least ten hours in a single day, the court should find the total number of hours billed to be excessive. (*Id.* at 5.) CMT also cites several particular examples of what it claims to be "excessiveness of the S&C litigation team's timekeeping practices." (*Id.*) These include S&C litigation support staff logging over ninety hours in five days for preparation for oral argument; a lead attorney billing more than fifty-six hours for oral argument preparation during the same time period; S&C associates and special counsel logging over 168 hours in five days

9

leading up to filing of the pretrial order; six S&C attorneys logging more than 550 hours during a four-and-a-half day trial and a day of jury deliberations; and two paralegals recording over 223 hours during the same trial period. (*Id.* at 5-6.) I conclude that these allegations do not support an argument that the hours S&C expended were excessive. This is especially true in light of the difficulties CMT imposed in discovery and at trial. (*See* D.I. 493 at 13-14.)

### 3.   Reasonable Hourly Rate

In determining the reasonable hourly rate by which counsel should be compensated, the court looks to the "prevailing rates in the relevant community." *Steiner v. Hercules, Inc.*, 835 F. Supp. 771, 786 (D. Del. 1993) (quoting *Blum*, 465 U.S. at 895); *Rode*, 892 F.2d at 1182. These are rates which are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (quoting *Blum*, 468 U.S. at 896 n.11); *see also Rode*, 892 F.2d at 1183.

S&C claims it generally does not bill clients, and does not bill Philips, on an hourly rate. (D.I. 496 at 2.) Rather, S&C bills Philips based on factors listed in the lawyers' Code of Professional Responsibility and Model Rules of Professional Conduct.[7] Nevertheless, S&C has provided documentation to support that what it

---

[7] These factors include:

    (a)    The contribution made, responsibility assumed, amount involved and results achieved.

    (b)    The novelty, complexity and difficulty of the questions presented and the skills required.

    (c)    Any extraordinary efforts required to meet time constraints or other requirements imposed by the client or

10

charged is comparable to what would be charged by others, given the prevailing rates in the relevant community. (D.I. 511 at 2-5.) S&C provides the billing rates for three national law firms with large New York City offices: Weil Gotshal & Manges LLP, Kirkland & Ellis LLP, and Latham & Watkins. (*Id.*, Ex. A.) The documentation shows billing rates for partners, counsel, associates, and paraprofessionals for each of the three firms. (*Id.*) S&C also provides a description of the qualifications and level of experience of each attorney who worked on Philips' claim on the '359 patent against CMT. (*Id.* at 2-5.) The calculated rates of each of the attorneys and paraprofessionals is comparable to the rates charged by the other three firms. (*Id.*)

CMT argues that billing rates submitted by S&C are not reasonable. (D.I. 573 at 6-8.) CMT contends that in order to determine the prevailing market rate in the relevant community, the court should look to what firms charge in Wilmington, Delaware, the forum where this matter was litigated. (*Id.* at 6-7.) However, the relevant case law does not support that proposition. In *Steiner*, a case involving a securities fraud class action suit, the court assumed that the relevant community was the national legal community that practiced securities litigation. 835 F. Supp. at 787. In *Bates*, the court held that the relevant legal community was the community in which the party sought representation. 2000 WL 1292677, at *5. This case involved a complex patent infringement dispute.

---

the circumstances.
(d)     The time and labor required and the experiences of those performing the services.
(e)     The fees customarily charged by similar firms for similar legal services.
(D.I. 496, Ex. A.)

Philips sought representation from a law firm in New York City with a well-earned national reputation in complex litigation.  Thus, the relevant legal community to which the court should look for prevailing rates for the other S&C attorneys is other highly-regarded law firms in New York City.

### 4.    Calculating the Lodestar

The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *See Hensley*, 461 U.S. at 433; *Rode*, 892 F.2d at 1183.  Multiplying the number of hours reasonably expended by each attorney or paraprofessional by the appropriate hourly rate produces a total of $2,628,071.00 (D.I. 565 at 5.)  This number is greater than the fee requested in Philips' original submission to the court, which was $2,448,750.  (D.I. 496 at 10.)  The difference is attributed to the fact that S&C did not use an hourly rate in computing its bills to Philips.[8]  Because the lodestar calculation is greater than the fee requested by Philips, I conclude that the amount of Philips' original request is reasonable and I award attorneys' fees to Philips in the amount of $2,448,750.00.

### 5.    Supplementing the Record

On December 29, 2005, I issued a Memorandum Order stating that Philips had failed to submit adequate documentation of either the hours expended or a reasonable rate.  (D.I. 551 at 2.)  I ordered that "Philips must submit not only the total hours worked, but detail supporting when the hours were worked, and what was done by whom during those hours."  (*Id.*)  Philips submitted the additional documentation

---

[8]  *See supra* note 8 and accompanying text.

required with respect to S&C (D.I. 565), but not with respect to PA&C. Similar to the

documentation S&C first submitted, PA&C's documentation was devoid of detail

supporting when the hours were worked and what was done by whom during those

hours. Nevertheless, because it may not have been clear from my Memorandum Order

that I required further documentation with respect to PA&C as well as S&C, I will now

give Philips ten days to submit the documentation to support the hours worked by

PA&C, as explained in my December 29, 2005 Memorandum Order. Furthermore, I will

give CMT ten days from the date Philips submits that documentation to comment on

Philips' submission. I then will give Philips five days from the time CMT submits its

comments to respond to those comments. The number of days given shall be

construed according to Rule 6 of the Federal Rules of Civil Procedure.

  B.    *Expenses*

  Philips seeks reimbursement of expenses incurred by S&C and PA&C related to

Philips' claim on the '359 patent against CMT. (D.I. 497, 565.) S&C has adjusted its

total expenses incurred from April 2003 to August 2004 in the same manner it adjusted

its attorneys' fees. (D.I. 496 at 5-7.) S&C seeks reimbursement for expenses totaling

$671,497.39 (D.I. 565 at 6); PA&C seeks reimbursement for expenses totaling

$75,644.54 (D.I. 497 at 2.) Courts may award reimbursement of certain expenses

when the expenses are reasonable, necessary to the prosecution of the litigation, and

adequately documented. *Steiner*, 835 F. Supp. at 792. These expenses normally

include those related to travel, food, lodging, telephone, mail, photocopying, facsimile,

13

courier, filing fees, deposition transcripts, subpoena services, and other related

services.  *See id.,* 835 F. Supp. at 792-796.

> 1.    *Expert Witness Fees*

Philips seeks to recover expenses related to expert witness fees.  The United

States Court of Appeals for the Federal Circuit held in *Amsted Industries Inc. v.*

*Buckeye Steel Castings Co.*, 23 F.3d 374 (Fed. Cir. 1994), that 35 U.S.C. § 285 does

not permit a prevailing party to recover expert fees.  *Id.* at 377 (stating that "an award

under section 285 encompasses only attorney fees; expert witness fees fall under 28

U.S.C. § 1920, subject to the 28 U.S.C. § 1821(b) limitation [for testifying experts]").

The court based this holding on the Supreme Court's finding that the term "attorneys'

fees" in a fee-shifting statute did not encompass fees for experts.  *West Virginia Univ.*

*Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991) (superceded by statute with respect to §

1988).  A court may award expert witness fees incident to the court's inherent equitable

powers when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive

reasons.'"  *Amsted*, 23 F.3d at 377-78 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32,

45-46 (1991).  Because § 285 allows courts to award attorneys' fees only in

"exceptional" cases, the court reasoned that it could award expert witness fees only in

cases that went "sufficiently beyond 'exceptional.'"  *Id.* at 379.  Accordingly, the court in

*Amsted* did not award expert witness fees, even though the defendant fraudulently

copied the patent at issue, lacked a good faith belief that the patent asserted was

invalid, denied infringement in the face of evidence to the contrary, burdened the court

with numerous motions, and violated a direct court order.  *Id.* at 379.  In light of that

14

precedent, and although I have held that CMT's assertion regarding its keeping of financial records was incredible, that CMT engaged in delay tactics during discovery, and that CMT engaged in trial misconduct (D.I. 493 at 13-14), I conclude that CMT's behavior did not go "sufficiently beyond exceptional" to warrant an award of expert witness fees to Philips.

2.   <em>Expenses Relating to Photocopying and Scanning</em>

CMT contends that Philips has provided inadequate documentation for its photocopying and scanning expenses for which it now seeks reimbursement.  (D.I. 508 at 24-25.)  In *Steiner*, the court denied recovery for photocopying and other expenses where a firm did not provide documentation identifying individual expenses or services or a billing rate for the items.  *Steiner*, 835 F. Supp. at 793.  Here, neither S&C nor PA&C has provided documentation that identified the individual expenses or services incurred, nor has the firm identified the billing rates for such expenses.  Consequently, I will grant CMT's request to reduce the reimbursement Philips seeks by 50%.[9]

3.   <em>Miscellaneous Expenses</em>

Philips requests reimbursement for expenses incurred by S&C and PA&C deemed as "miscellaneous."  Such descriptions leave the court no way of determining if these expenses were reasonable and necessary to the prosecution of the litigation.

---

[9] This 50% reduction is in addition to the 50% reduction Philips already imposed to compensate for the fact that its total expenses related to litigation involving multiple defendants and two patents.

Because these expenses are not adequately documented, I deny Philips' request for all "miscellaneous" expenses.[10]

>    4.    *Total Expenses For Which Philips May Seek Reimbursement*

After deducting the expenses relating to expert witness fees ($445,405.40) (*see* D.I. 496, Exs. B-J; D.I. 508, Ex. D at 35), deducting 50% of the photocopying and scanning expenses incurred by S&C ($93,029.79) and PA&C ($22,147.00) (*see* D.I. 496, Exs. B-J; D.I. 497, Ex. A at 2; D.I. 508, Ex. D at 35-36), and deducting S&C and PA&C's "miscellaneous" expenses ($94,446.03 and $9,180.00 respectively) (*see* D.I. 496, Exs. B-J; D.I. 497, Ex. A at 2; D.I. 508 at 36), and applying Philips' 50% reduction to compensate for the fact that its total expenses related to litigation involved multiple defendants and two patents,[11] I conclude that Philips' reimbursable expenses total $285,690.44.[12]

---

[10] Philips argues that their miscellaneous costs contained further descriptions such as "document preparation" and "disbursements" and are thus reimbursable. (D.I. 510 at 8 n.5.) Nevertheless, similar to its expenses relating to photocopies and scanning, these expenses are not supported with documentation identifying individual expenses or services or a billing rate.

[11] CMT argues that Philips lumped together expenses for the period between March 2004 and April 2004 as one expense disbursement, but only allocated 43% of these expenses to March 2004 without explanation. (D.I. 508, Ex. D at 34.) Likewise, CMT points out that expenses for the months of May 2004 and June 2004 were lumped together as one expense disbursement, but only 2.7% of these expenses were allocated to June 2004 without explanation. (*Id.*) Consequently, I conclude that CMT's proposal to allocate 50% of the expenses for the period between March 2004 and April 2004 to be allocated to March 2004, and 50% of the expenses for the period between May 2004 and April 2004 to be allocated to May 2004 is reasonable.

[12] Philips' total reimbursable expenses include $230,299.40 incurred by S&C, and $55,391.04 incurred by PA&C.

## IV.    CONCLUSION

Accordingly, for the aforementioned reasons, it is hereby ORDERED that CMT shall pay $2,448,750.00 in attorneys' fees and $285,690.44 in expenses.

It is further ORDERED that, should Philips choose to seek additional fees for work performed by PA&C, it shall submit proper documentation relative to that work, and CMT may respond, and Philips may reply, all according to the schedule set forth herein.

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware
Dated: October 23, 2006

17